# Graber v. Berks County Board of Assessment Appeals

*Paul R. Ober*, for appellants.
*Edwin L. Stock*, for appellee.

LASH, *J.*, April 13, 2013—The appellants, Randall S. Graber and Patricia L. Graber, husband and wife, (hereinafter "landowners"), have appealed the decision of the Berks County Board of Assessment Appeals (hereinafter "board") directing a rollback from the preferential use assessment to fair market value assessment of real estate owned by landowners, pursuant to the Pennsylvania Farmland and Forest Land Assessment Act of 1974 (Act 319), commonly known as the Clean and Green Act, 72 P.S. § 5490.1, et seq., (hereinafter "Clean and Green Act"). In directing the rollback, the board issued a notice setting forth that the breach was "due to a non-owner occupied business."

Landowners challenged the board's determination, arguing that landowners never applied for, nor intended, the business portion of the property to be included in preferential assessment. Subsequently, landowners amended their appeal to include a claim that the contents

of the notice of breach were insufficient, and that the preferential assessment was improperly terminated prior to granting landowners a hearing.

This court bifurcated the issues and heard testimony on the issue of notice on April 18, 2013. This Court enters the following findings of fact:

## I. FINDINGS OF FACT

1. The appellants are Randall S. Graber and Patricia L. Graber, husband and wife, (hereinafter "landowners"), adult individuals whose mailing address is 2285 Farmington Avenue, Boyertown, Berks County, Pennsylvania 19512.

2. Appellee, Berks County Board of Assessment Appeals (hereinafter "board"), is an agency of the County of Berks, with a principal place of business located in the Berks County Services Center, Third Floor, 633 Court Street, Reading, Berks County, Pennsylvania 19601.

3. Landowners are the record owners of real estate located at 2285/2289 Farmington Avenue, Douglass Township, Boyertown Area School District, Berks County, Pennsylvania, (hereinafter "property").

4. The property consists of approximately 21.19 acres of land improved with a commercial building and detached improvements. The parcel number for the property is 41-5386-11-56-1592.

5. The property was transferred to Landowners by deed dated January 12, 2007, and recorded in the Office of the Berks County Recorder of Deeds on January 19, 2007, in Record Book 5058, Page 1754.

6. The previous owner of the Property, William E.

Brady, had applied for and received preferential assessment under the Clean and Green Act. Mr. Brady's application was executed on February 10, 2004, and was recorded in the Berks County Recorder of Deeds Office on February 18, 2004, in book 4106, page 1295.

7. Landowners made application for preferential assessment under the Clean and Green Act by executing an application on February 13, 2007 (hereinafter "2007 application"), which was recorded in the Office of the Berks County Recorder of Deeds on February 26, 2007, in book 5080, page 0673.

8. The 2007 application sets forth, among other things, that the net acreage of the property is 21.190. The application stated that the use of the property qualifying it for preferential assessment was "agricultural reserve." The application states that "16" acres was "forested or woodland" and "4" acres was used for a business, a "fishing pond."

9. Landowners utilized the business acreage for several businesses, including leasing space to a third party to operate a restaurant, residential leasing, providing a private fishing area known as "Fishermen's Paradise," and selling bait. Landowners believe that the business uses are the same or similar uses as conducted by the previous owner.

10. The property was accepted into the Clean and Green program. According to representatives of the Berks County Assessment Office, the office considered the business uses as a "rural enterprise," allowing 2 of the 4 acres to be given preferential assessment.

11. Subsequently, the Tax Assessment Office made a determination that landowners had breached the provisions

of the Clean and Green Act and issued a notice. The notice, dated August 12, 2011, set forth: "Due to a non-owner occupied business, the agreement covering this tract has been breached." No other reasons for the alleged breach were given The notice also established the tax rollback penalty with interest for the seven (7) preceding years at twelve thousand eight hundred seventy-eight dollars and twenty-four cents ($12,878.24).

12. Upon receiving this notice, landowners filed a new application for preferential assessment, this application being dated September 13, 2011 (hereinafter "2011 application"). In the 2011 application, the net acreage is again set at 21.19. The preferential use is listed as "forest reserve," with 17 acres being forested. The business use is again listed as a "fishing pond," with the business acreage being listed at "17," determined to be a typographical error.[1] The application also sets forth "list net acreage not to be considered: 4 acres containing the buildings are not to be included. This is the only property to be excluded; therefore, no map/survey is attached."

13. Landowners duly filed an appeal of the notice of breach to the board. Following a hearing held on December 19, 2011, the board notified landowners of its decision to uphold the breach on the property. Landowners then appealed to common pleas court.

## II. DISCUSSION

In *Melcher v. Berks County Board of Assessment Appeals*, 104 Berks County Law Journal 331 (2012), this Court similarly reviewed the sufficiency of a notice of

---

1. From the later 4 acre provision in the application, as well as the testimony, it is clear that the business acreage should have been listed at "4," not "17."

breach of the covenant for preferential tax assessment. In determining that the notice was fundamentally defective and violated Ms. Melcher's due process rights, this court stated then and reiterates here:

Section 5490.3(d)[2] of the Clean and Green Act requires governmental assessment authorities to provided notice to a landowner before terminating preferential assessment, providing, in pertinent part:

(d) The county board of assessment appeals may not terminate preferential assessment of land previously determined by the board to qualify for preferential assessment without:. . . .

(2) written notice under section 5(a)(2)[3] from the county assessor to the landowner that preferential assessment is to be terminated, stating the reason for such termination and the opportunity for a hearing under Section 9.[4]

This provision affords a landowner reasonable notice and an opportunity to be heard and as such is a mandated protection of a landowner's constitutional due process rights. *See Close v. Berks County Board of Assessment,* 839 A.2d 462, 464-466 (Pa.Cmwlth. 2003). *See also* Section 553 of the Local Agency Law, 2 Pa.C.S. Section 553.

*Id.* 332-33.

As landowners urge, the notice provides very little information on the reason for the termination, stating only

---

2. 72 P.S. section 5490.3(d).
3. 72 P.S. section 5490.5(a)(2).
4. 72 P.S. section 5490.9.

that the termination was "due to a non-owner occupied business." The information is sufficient enough, however, to draw the inference that the breach could only refer to a breach of the conditions of a "rural enterprise." This conclusion is consistent with the testimony provided by the representative of the Tax Assessment Office. Also, according to the testimony, the business causing the breach was the restaurant, which at the time of the breach was identified as "CJ's Bistro on the Lake," owned and operated by a third party.[5]

The provisions for obtaining preferential assessment for land valued for a rural enterprise appears in § 5490.8(d) (1) of the Clean and Green Act,[6] which states:

(d) (1) A landowner may apply a maximum of two acres of a tract of land subject to preferential assessment toward direct commercial sales of agriculturally related products and activities or for a rural enterprise incidental to the operational unit without subjecting the entire tract to roll-back taxes, provided that:

(i) The commercial activity is owned and operated by the landowner or his beneficiaries who are designated as class A for inheritance tax purposes.

(ii) An assessment of the inventory of the goods involved verifies that it is owned by the landowner or his beneficiaries.

(iii) The rural enterprise does not permanently render the land incapable of producing an agricultural commodity.

---

5. The business was not specifically identified in the notice of breach, however.

6. 72 P.S. section 5490.8(d)(1).

(2) Roll-back taxes shall be imposed upon that portion of the tract where the commercial activity takes place and the fair market value of that tract shall be adjusted accordingly.

By sending the notice, the Assessment Office has made certain irregularities apparent. For business acreage to be accepted as a rural enterprise and preferentially assessed, the landowner must make application and the acreage may not exceed 2 acres. The 2007 application lists the business acreage as 4 acres. Further, there is nothing in the 2007 application which requests preferential assessment of the 4 acres or for the Assessment Office to consider all or a portion of the business acreage to be a rural enterprise. In fact, landowners argue that it was never their intention to obtain preferential assessment of the 4 acres, that the application was to obtain preferential assessment of the remaining 16 or 17 acres only.

If, as the Tax Assessment Office suggests, the approval of the application included approval of 2 acres for a rural enterprise, not 4, then the question becomes which 2 acres received preferential assessment? There was nothing in the application, the notice of breach, or to the court's knowledge anywhere else, that delineated the location of the different businesses within the 4 acres. It is unlikely that the restaurant alone utilized 2 or more acres for its business. If, in fact, the breach was limited to the restaurant, any other businesses could qualify under the rural enterprise provisions, and arguably, 2 of the 4 business acres would continue to have qualified for preferential tax assessment despite the presence of the restaurant. The notice should have provided specific guidance.

It is apparent that the problems arising in this case come

from the ambiguities in the 2007 application and from the actions taken by the board at the time of the application. In essence, the Tax Assessment Office should have either granted the application for preferential assessment for the 16 or 17 acres only, or obtained additional information regarding the nature of the businesses, to properly establish a rural enterprise and the acreage being used for that enterprise. None of these things was done. Accordingly, the notice could not have made sense to the landowners, who had applied for preferential assessment for the non-business acreage only, and who were unaware that the Assessment Office had treated their application as a request for preferential assessment for a rural enterprise.

Landowners should not be held responsible for payment of rollback taxes considering the problems with the notice and the irregularities in the Assessment Office's conclusions on the application.[7] We note the provisions of 7 Pa. Code § 137(b). 52(f) which states:

(f) *Termination of preferential assessment on erroneously-enrolled land.* If a county assessor erroneously allowed the enrollment of land that did not, at the time of enrollment, meet the minimum qualifications for preferential assessment, the county assessor shall, in accordance with section 3(d) (2) of the act provide the landowner written notice that preferential assessment is to be terminated. The notice shall state the reasons for termination and afford the landowner the opportunity for a hearing. If the use of the land was not an eligible use at the time it was enrolled, and preferential assessment is terminated for that reason, no roll-back taxes shall be due from the

---

7. Based on this determination, no analysis of the other issues raised by landowners is necessary.

138

landowner as a result.

This court enters the following order:

ORDER

And now, this 30th day of April 2013, upon consideration of the appeal of Randall S. Graber and Patricia L. Graber, husband and wife, from the decision of the Berks County Board of Assessment Appeals finding a breach of the preferential assessment covenant and imposing rollback taxes and interest, the relief requested in said appeal is granted. Judgment is entered in favor of appellants, Randall S. Graber and Patricia L. Graber, husband and wife, and against appellee, Berks County Board of Assessment Appeals. The Berks County Tax Assessment Office shall not impose rollback taxes to appellants' property, parcel I.D. number 41-5386-11-56-1592.